UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>LANCE MALONE, et al.,<br><br>    Defendants. | 02:03-CR-00500-LRH-LRL<br><br>ORDER |

Presently before the court is defendant Lance Malone's ("Malone") Motion to Dismiss (# 92[1]). The Government has filed a consolidated response (# 112), and Malone has replied[2] (# 125).

**I. Factual and Procedural Background**

Malone is currently facing charges of conspiracy in violation of 18 U.S.C. § 371, wire fraud in violation of 18 U.S.C. §§ 1343, 1346, and extortion under color of official right in violation of 18 U.S.C. § 1951. These charges arise from Malone's allegedly corrupt relationship with Michael Galardi ("Galardi"), the former owner of several Las Vegas strip clubs. The Second Superseding Indictment alleges that Malone assisted Galardi in Galardi's attempts to corruptly influence several Clark County commissioners. Trial in this matter is scheduled to commence on September 18,

---

[1] Refers to the court's docket number.

[2] In his reply, Malone argues for the first time that the wire fraud counts are duplicitous. However, this court will not consider an argument that is raised for the first time in a reply brief. *See Martinez-Serrano v. Immigration & Naturalization Service*, 94 F.3d 1256, 1259-60 (9th Cir. 1996).

2006.

## II. Discussion

A valid criminal indictment must contain the necessary elements of the crime alleged. *United States v. Boone*, 951 F.2d 1526, 1542 (9th Cir. 1991). In this case, Malone argues that the indictment should be dismissed because it fails to allege the element of *quid pro quo*. Alternatively, Malone argues that counts one through eighteen should be dismissed for failure to allege implied elements of honest services wire fraud. The Government responds by arguing that the indictment properly alleges all the necessary elements of wire fraud and extortion.

### A. *Quid Pro Quo*

In *United States v. McCormick*, the Supreme Court held that a showing of *quid pro quo* is necessary for a conviction under the Hobbs Act when a public official receives a campaign contribution. 500 U.S. 257, 272-74 (1991). In reaching that conclusion, Justice White stated,

> Serving constituents and supporting legislation that will benefit the district and individuals and groups therein is the everyday business of a legislator. It is also true that campaigns must be run and financed. Money is constantly being solicited on behalf of candidates, who run on platforms and who claim support on the basis of their views and what they intend to do or have done. Whatever ethical considerations and appearances may indicate, to hold that legislators commit the federal crime of extortion when they act for the benefit of constituents or support legislation furthering the interests of some of their constituents, shortly before or after campaign contributions are solicited and received from those beneficiaries, is an unrealistic assessment of what Congress could have meant by making it a crime to obtain property from another, with his consent, "under color of official right." To hold otherwise would open to prosecution not only conduct that has long been thought to be well within the law but also conduct that in a very real sense is unavoidable so long as election campaigns are financed by private contributions or expenditures, as they have been from the beginning of the Nation.

*Id*. at 272. This court has previously found the Supreme Court's reasoning in *McCormick* equally applicable to charges of honest services wire fraud where the "scheme or artifice to defraud" involved the payment of campaign contributions. *See* (Jury Instructions (# 396), Jury Instruction No. 26.) Therefore, to the extent the Government alleges that campaign contributions amount to violations of 18 U.S.C. §§ 1343, 1346, and 1951, the Government must show the requisite *quid pro*

*quo*.

Although it is necessary to show *quid pro quo* where it is alleged that a campaign contribution is part of the illegal conduct, the court finds that a criminal indictment does not need to specifically allege *quid pro quo*. In *United States v. Aliperti*, the Eastern District of New York found that, with respect to the Hobbs Act, "the requirement of a *quid pro quo*, rather than amounting to an additional element unspecified in the statute, is encompassed within the language of the statute itself." 867 F.Supp. 142, 145 (E.D.N.Y. 1994). The *Aliperti* court, relying on the Supreme Court's decision in *Evans v. United States*, 504 U.S. 255 (1992), examined the common law meaning of "extortion under color of official right" and noted that the *quid pro quo* requirement was derived from the common law meaning of this phrase. *Id*. The *Aliperti* court therefore rejected the idea that *quid pro quo* must be alleged in the indictment because it is not necessary for an indictment to include the definition of a legal term. *Id*. (citing *Hamling v. United States*, 418 U.S. 87, 118 (1974)). This court agrees with the *Aliperti* court and finds that an indictment does not need to allege *quid pro quo* when it alleges that a campaign contribution violated the Hobbs Act.

Similarly, the court finds that a criminal indictment does not need to allege *quid pro quo* in an indictment that alleges campaign contributions amount to honest services wire fraud. Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "The Government need only allege the essential facts necessary to apprise a defendant of the crime charged and not its theory of the case." *United States v. Ors, Inc.*, 997 F.2d 628, 629 (9th Cir. 1993) (citations and internal quotations omitted). "Indictments that follow statutory language are generally sufficient if the statute sets forth the elements of the crime." *United States v. Zavala*, 839 F.2d 523, 526 (9th Cir. 1988) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

The essential elements of honest services wire fraud include: 1) a scheme or artifice to defraud; 2) the intent to defraud; and 3) the transmission of a wire communication in interstate commerce to carry out or to attempt to carry out the scheme or plan. *See* 18 U.S.C. §§ 1343, 1346. Section 1346 defines the term "scheme or artifice to defraud' to include "a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. In this case, the language used in the indictment follows the statutory language contained in 18 U.S.C. §§ 1343 and 1346. *See* (Superseding Indictment at 25.)

The issue of *quid pro quo* only arises when the alleged scheme or artifice to defraud involves campaign contributions. Therefore, quid pro quo is not a separate element of the wire fraud offense, but makes up part of the "scheme or artifice to defraud." Here, the Government properly alleged that Malone devised a scheme or artifice to defraud. *Id*. The Government further set forth facts describing that scheme to defraud, which, if proven during trial, a reasonable jury could find constitutes a *quid pro quo*. *Id.* at 7 - 24. Therefore, the court finds that the indictment sufficiently alleges the elements of honest services wire fraud and the facts necessary to apprise Malone of the crime charged.

**B. The "implied elements of 'Honest Services' Fraud"**

In addition to arguing that the indictment is fatal for failing to allege *quid pro quo*, Malone argues that the allegations regarding honest services wire fraud fail to allege a violation of state law and private gain. In response, the Government argues that honest services wire fraud does not require either a violation of state law nor a showing of private gain. The court will discuss each issue below.

**1. Violation of State Law**

There is a split in authority as to whether honest services wire fraud requires a violation of

4

state law. The Third Circuit[3] and the Fifth Circuit[4] seem to require a showing of a violation of state law. On the other hand, the First,[5] Fourth,[6] Seventh,[7] Eighth,[8] and D.C.[9] Circuits do not require a violation of state law to show honest services wire fraud.

Although the issue has not been directly decided by the Ninth Circuit, the Ninth Circuit has previously given guidance on this issue in a similar case. In *United States v. Louderman*, the appellants appealed their convictions for wire fraud that were based on a scheme where they misrepresented themselves, over the telephone, to telephone companies and United States post office branches in order to collect information. 576 F.2d 1383, 1386 (9th Cir. 1978). In discussing the requirements of the wire fraud statute, the Ninth Circuit stated, "state law is irrelevant in determining whether a certain course of conduct is violative of the wire fraud statute." *Id.* at 1387.

---

[3] *United States v. Murphy*, 323 F.3d 102, 104 (3d Cir. 2003) ("In our recent decisions interpreting honest services fraud, we emphasized the need to establish a violation of state law in such cases to serve as a limiting principle on the federal prosecution of local political actors.").

[4] *United States v. Brumley*, 116 F.3d 728, 733-35 (5th Cir. 1997) (suggesting that a state law violation may be required to show honest services wire fraud).

[5] *United States v. Sawyer*, 85 F.3d 713, 726 (1st Cir. 1996) ("In general, proof of a state law violation is not required for conviction of honest services fraud.") (citing *United States v. Silvano*, 812 F.2d 754 (1st Cir. 1987)).

[6] *United States v. Bryan*, 58 F.3d 933, 943 (4th Cir. 1995) (rejecting a claim that section 1346 requires a violation of some law or regulation other than the mail fraud statute itself) *abrogated on other grounds by United States v. O'Hagan*, 521 U.S. 642, 650 (1997).

[7] *United States v. Martin*, 195 F.3d 961 (7th Cir. 1999) (rejecting the argument that the fiduciary duty which is charged in mail fraud must have its origin in state law on the basis of prior circuit precedent).

[8] *United States v. States*, 488 F.2d 761, 767 (8th Cir. 1973) ("The purpose of 18 U.S.C. § 1341 [, prohibiting mail fraud,] is to prevent the Postal Service from being used to carry out fraudulent schemes, regardless of what is the exact nature of the scheme and regardless of whether it happens to be forbidden by state law.").

[9] *United States v. Lemire*, 720 F.2d 1327, 1335-36 (D.C. Cir. 1983) ("Although critical ambiguities about the scope of the wire fraud statute remain, there is judicial consensus about certan requisite elements of a scheme to defraud. The duty breached need not arise from state or federal law; in particular, it may stem from an employment relationship of the sort that imposes discretion and consequently obligations of loyalty and fidelity on the employee.").

In light of this directive, the court finds the majority view persuasive. A showing of a violation of state law is not necessary to sustain a conviction for honest services wire fraud.

### 2. Private Gain

As with the issue concerning state law, there is a split in authority as to whether private gain must be shown in order to sustain a conviction for honest services wire fraud. The majority of courts to address the issue have found that a showing of private gain is not necessary. *See United States v. Welch*, 327 F.3d 1081, 1106 (10th Cir. 2003); *Silvano*, 812 F.2d at 760. In contrast to the First and Tenth Circuits, the Seventh Circuit has found that "[a]n employee deprives his employer of his honest services only if he misuses his position (or the information he obtained in it) for *personal gain*." *United States v. Bloom*, 149 F.3d 649 (7th Cir. 1998) (emphasis added).

The court agrees with the First and Tenth Circuits and finds that personal gain is not an element of honest services wire fraud. As previously mentioned, honest services wire fraud consists of three elements: 1) a scheme or artifice to defraud; 2) the intent to defraud; and 3) the transmission of a wire communication in interstate commerce to carry out or to attempt to carry out the scheme or plan. *See* 18 U.S.C. §§ 1343, 1346. The crime is committed where a defendant is involved in a scheme or artifice to defraud with the requisite intent to defraud. *See id*. "[T]he intent to defraud does not depend upon the intent to gain, but rather, on the intent to deprive." *Welch*, 327 F.3d at 1106.

In setting forth the minority position, the *Bloom* court believed that imposing a requirement of private gain would serve as a limiting principle to ensure that not every breach of a fiduciary duty would be punishable as honest services fraud. *Bloom*, 149 F.3d at 655. Although this court agrees that a limiting principle is important to keep the statute from reaching too far, the court believes that the "intent to defraud" element serves as such a limiting principle. The requirement of specific intent, *United States v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir. 1980), prevents every potential "scheme or artifice to defraud" from becoming a federal crime.

1  IT IS THEREFORE ORDERED that Malone's Motion to Dismiss (# 92) is hereby
2  DENIED.
3  IT IS SO ORDERED.
4  DATED this 6th day of September, 2006.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE